**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
─────────────────────────────────

**WILLIAM DANIELSON,**

                              **Petitioner,**

        **v.**                                                    **9:22-CV-0676**
                                                              **(BKS/ML)**

**K. MCCARTHY,**

                        **Respondent.**

─────────────────────────────────

**APPEARANCES:**                          **OF COUNSEL:**

**WILLIAM DANIELSON**
Petitioner, pro se
15-B-3809
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

**HON. LETITIA JAMES**                    **JAMES FOSTER GIBBONS, ESQ**.
Attorney for Respondent                  Ass't Attorney General
New York State Attorney General
28 Liberty Street
New York, NY 10005

**BRENDA K. SANNES,**
**Chief United States District Judge[1]**

**MEMORANDUM-DECISION & ORDER**

## I.    INTRODUCTION

        Petitioner William Danielson filed a pro se federal habeas corpus petition

pursuant to 28 U.S.C. § 2254. Dkt. No. 1, Petition ("Pet.").[2]  The Petition, dated June 3,

─────────────────────────

[1] This case was originally assigned to the Hon. Thomas J McAvoy, Senior U.S. District Judge, and has been reassigned to the undersigned. Dkt. No. 45.

[2] The case was initially filed in the United States District Court for the Western District of New York; however, it was transferred to this district on June 21, 2022. Dkt. No. 6, Transfer Order; Dkt. No. 7.

2022, challenges the lawfulness of the State of New York's custody over him arising from a December 18, 2015 judgment in Chenango County Court. *See generally* Pet.[3] That judgment sentenced Petitioner to an indeterminate term of 20 years to life in prison based on his conviction, pursuant to a negotiated guilty plea, of murder in the second degree (N.Y. Penal Law § 125.25(3)). Pet. at 1;[4] *see also People v. Danielson*, 170 A.D.3d 1430, 1430–31, 96 N.Y.S.3d 754, 755 (N.Y. App. Div. 3rd Dept. 2019).

Respondent successfully moved to file an answer limited to the issue of timeliness. *Id.* Petitioner filed a reply arguing, inter alia, that tolling should apply to prevent the Petition from being dismissed as time-barred. *Id.* Judge Lovric recommended that the Petition be denied and dismissed as untimely, and that no certificate of appealability be issued. *See generally id.* Petitioner filed objections to Judge Lovric's recommendations to which Respondent has filed a response. Dkt. Nos. 42, 43.[5] For the following reasons, the Court adopts the Report-Recommendation in its entirety.

## II.    STANDARD OF REVIEW

---

[3] Petitioner argues that he is entitled to federal habeas relief because (1) he was subjected to judicial bias and prejudice, Pet. at 9-16; (2) his Fourth Amendment rights were violated by search warrants that lacked probable cause and were signed by a biased judge, *id.* at 16-19; (3) there was prosecutorial misconduct, *id.* at 19-29; (4) there were *Brady* violations, *id.* at 30-35; and (5) his trial counsel was constitutionally ineffective, *id.* at 36-41.

[4] Citations to the parties' filings refer to the pagination generated by CM/ECF, the Court's electronic filing system. The only exception is the State Court Records ("SCR"), Dkt. No. 39 through 39-11, which are separately and consecutively paginated with a Bates stamped number in the bottom-center of each page. Accordingly, any citation to the SCR will be to that Bates stamped number.

[5] It is not clear why Petitioner later filed objections on July 21, 2025, arguing that he "was never served with a copy of" the Report-Recommendation. Dkt. No. 47. In any event, the untimely objections appear to be an abbreviated version of the objections Petitioner filed on March 27, 2024, Dkt. No. 42, and the Court has considered the March 27, 2024 objections.

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (The Court must make a de novo determination to the extent that a party makes specific objections to a magistrate's findings.).  Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F.Supp. 2d 485, 487 (S.D.N.Y. 2009). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

## III.    DISCUSSION

Petitioner argues that Judge Lovric's recommendations should be rejected because (1) Petitioner has not been "supplied the same record as Respondent and citations to same do not correlate to the record in Petitioner's possession-which is still incomplete;" (2) Judge Lovric permitted Respondent "to offer misinformation on matters irrelevant to timeliness which have since tainted this Court's perception of the case;" (3) Judge Lovric erred in determining the timeliness of the Petition; (4) Judge Lovric erred in granting Respondent a nunc pro tunc extension of time to respond to the Petition; and (5) Judge Lovric erred in recommending that no certificate of appealability should issue. *See* Dkt. No. 42.  Respondent opposes each of Petitioner's arguments. *See* Dkt. No. 43.

Having reviewed Petitioner's Objections 1, 2, and 4 *de novo*, the Court finds that Petitioner has failed to identify any error or abuse of discretion in the management of

this case or raise issues meaningfully impacting Judge Lovric's timeliness determination. The Court has reviewed Judge Lovric's timeliness calculation *de novo* and, for the following reasons, concurs with Judge Lovric's determination that the habeas petition is untimely.

### A. Relevant Background

As Judge Lovric concluded, Petitioner's conviction became final when the Supreme Court denied his application for a writ of certiorari on November 4, 2019. *See* R&R at 11. This started the running of the applicable one-year statute of limitations under 28 U.S.C. § 2244(d)(1). *Id.* Without tolling, Petitioner had until November 4, 2020 to timely file his habeas petition. *Id.* Here, the Petition was signed on June 3, 2022. Even assuming the Petition was delivered to prison authorities for mailing on the same date,[6] without some type of tolling the Petition was filed one year and seven months beyond the expiration of the limitations period. *Id.*

Following the Supreme Court's denial of Petitioner's application for a writ of certiorari, he filed two collateral state court challenges. The first was a petition for a writ of error coram nobis filed on November 2, 2020. *Id.* at 8. The second was a motion to vacate the judgment pursuant to New York Criminal Procedure Law § 440, which was dated June 9, 2021, but, according to Petitioner, was filed on July 4, 2021. *Id.* at 10.[7]

---

[6] Under the prison "mailbox rule," a petitioner's application is deemed filed on the date he delivers it to the prison authorities for mailing. *Houston v. Lack*, 487 U.S. 266, 270 (1988).

[7] The Notice of Motion, the Affidavit in Support, the Statement of Facts, the Memorandum of Law, and the Verification for the § 440 motion are all dated June 9, 2021. *See* State Court Record ("SCR") at 957-59, 961-63, 964-993, 994-1072, 1073. Petitioner points out that the affidavit of service for the § 440 motion indicates that the motion was served on July 4, 2021. Dkt. No. 42 at 9; *see* SCR at 1074. The difference in dates does not affect the analysis because the Court finds that the limitation period expired on June 7, 2021, before the motion was signed.

### 1. Petition for Writ of Error Coram Nobis

The New York State Supreme Court, Appellate Division, Third Department denied the coram nobis petition on April 9, 2021. R&R at 8.  Petitioner then filed a motion to reargue or, in the alternative, for permission to appeal to the New York Court of Appeals. *Id.* at 8-9.  On June 4, 2021, the Third Department issued an order stating that the "[m]otion to reargue . . . is denied." *Id.* at 9; *see* State Court Record ("SCR"), Dkt. No. 39, at 934 ("June Order").  The June Order did not address the application for leave to appeal. *Id.*  The record contains a "Corrected Decision and Order on Motion" from the Third Department indicating that Petitioner's "[m]otion to reargue or, in the alternative, for permission to appeal to the Court of Appeals" were both denied. *See* SCR at 935 ("Corrected Order"). There is no indication on the face of the Corrected Order when it was issued, but it contains the statement at the top of the page: "Decided and Entered: June 4, 2021108633." *Id.* The document indicates that Petitioner's motion number was 108633, so the Corrected Order presumably indicates that the subject motion was deemed decided on June 4, 2021. This presumption is further supported by the record in this case. *See* SCR at 935.[8]

On July 1, 2021, Petitioner filed a pro se application to the New York Court of Appeals seeking leave to appeal the Third Department's denial of his coram nobis petition pursuant to New York Civil Practice Law & Rules 5602.  R&R at 9.  On July 9, 2021, "the Court of Appeals responded to petitioner's motion, informing him that the

---

[8] SCR at 935 contains a reference to "*People v William Danielson*, Motion No: 108633, Slip Opinion No: 2021 NY Slip Op 69338(U)." *Id.*  2021 NY Slip Op 69338(U) is the Corrected Order that appears at SCR 935.  This indicates that it is a "Motion Decision" from the Third Department on a "[m]otion to reargue or, in the alternative, for permission to appeal to the Court of Appeals," with a date of "June 4, 2021" at the top of the decision. *See People of the State of New York v. Corrected Decision and Order William* [sic], No. # 108633, 2021 WL 3141609 (N.Y. App. Div. 3rd Dept. June 4, 2021). It orders that "the motion to reargue is denied," and "that the motion for permission to appeal to the Court of Appeals is referred to Justice Egan, who makes the following decision: Motion denied." *Id.*

relief he sought – applying for leave to appeal his criminal case – was governed by a different statutory provision; therefore, while the letter did not constitute a judicial determination, it did provide information on the proper procedure for filing an application for leave to appeal in a criminal case." *Id.* (citing Dkt. No. 37 ("Traverse") at 24). Petitioner subsequently filed a leave application with the Court of Appeals. (Traverse at 25).

On August 27, 2021, the New York State Prosecutor's Training Institute ("NYPTI") authored a letter to the Hon. Madeline Singas, Judge of the New York Court of Appeals, (1) asserting that Petitioner's July 1, 2021 application for leave to appeal had already been denied, and (2) explaining that the denial was incorporated into the Third Department's June Order, as indicated by the Third Department's Corrected Order entered on July 21, 2021. *Id.* (citing SCR at 938-941). On September 30, 2021, the New York Court of Appeals issued an order dismissing Petitioner's leave application "because an application for the same relief has already been made to a Justice of the Appellate Division." *Id.* at 10 (citing SCR at 942, in turn citing CPL 460.20; *People v. McCarthy*, 250 N.Y. 358, 361 (N.Y. 1929)); *see also* Pet. at 53 (attaching *People v. Danielson*, 37 N.Y.3d 1026, 175 N.E.3d 444 (N.Y. 2021) (denying Petitioner's application for leave to appeal to the New York Court of Appeals).

## 2. Petitioner's § 440 Motion

Petitioner's § 440 motion was denied by the Chenango County Court on September 6, 2022. R&R at 10. Petitioner sought leave to appeal to the Third Department, which that court denied on January 6, 2023. *Id.* (citing, *inter alia*, SCR at 1198 (Third Department Decision)). Petitioner applied for leave to appeal to New York

Court of Appeals, which that court "dismissed [on March 8, 2023,] because the order

sought to be appealed from is not appealable under [New York Criminal Procedure Law]

§ 450.90(1)." *Id.* (citing, *inter alia*, SCR at 1206 (Court of Appeals decision)).

### B. Judge Lovric's Statutory Tolling Assessment

As Judge Lovric stated:

> [T]he one-year limitation period under [the Antiterrorism and Effective Death
> Penalty Act of 1996 ("AEDPA")] is tolled while "a properly filed application for
> State post-conviction or other collateral review with respect to the pertinent
> judgment or claim is pending." 28 U.S.C. § 2244(d)(2); [*Saunders v. Senkowski*,
> 587 F.3d 543, 548 (2d Cir. 2009)]. The tolling provision "excludes time during
> which properly filed state relief applications are pending, but does not reset the
> date from which the one-year statute of limitations begins to run." *Smith v.
> McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam). The tolling provision
> excludes from the limitations period only the time that the state relief application
> remained undecided, including the time during which an appeal from the denial of
> the motion was taken. *Saunders*, 587 F.3d at 548; *Smith*, 208 F.2d at 16.

> Here, 364 days in the limitations period had passed between the date petitioner's
> conviction was final, when his petition for a writ of certiorari was denied, and the
> date the coram nobis action was commenced. Statutory tolling would continue
> while the writ of error coram nobis was pending, or "from the time it is first filed
> until [the time it is] finally disposed of and further appellate review is unavailable
> under the particular state's procedures." *Saunders*, 587 F.3d at 548; *accord
> Hizbullahankhamon v. Walker*, 255 F.3d 65, 69-72 (2d Cir. 2001).

> . . . .

> Therefore, the limitations period would be tolled until the Third Department's June
> Order, dated June 4, 2021, when both petitioner's motions to reargue and
> request for permission to appeal the denial of his coram nobis application to the
> Court of Appeals were denied. SCR at 935 (clarifying that the June Order from
> the Third Department disposed of both of petitioner's requests to reargue and
> receive permission to appeal); *see also* SCR at 942 (dismissing leave application
> filed in the Court of Appeals because "an application for the same relief has
> already been made [and denied by] . . . the Appellate Division.").

R&R at 12-13.

Judge Lovric reasoned that "[t]he fact that the June Order was retroactively

corrected does not appear to have any bearing on the instant analysis since 'statutory

tolling [under the] . . . AEDPA ends with the 'filing' of the state court's final order.'" *Id.* at 13 (quoting *Saunders*, 587 F.3d at 549 (citations omitted)). Thus, Judge Lovric concluded, "even though the June Order was later changed to indicate it denied both of petitioner's requests, instead of just his motion to reargue, the corrected order still indicated that it was filed on June 4th and state court direct and collateral challenges 'cease[] to be 'pending' for the purposes of the AEDPA on the date of filing.'" *Id.* (quoting *Saunders*, 587 F.3d at 549).

Judge Lovric further found that "[a]ny argument that petitioner's application seeking leave to appeal directly from the Court of Appeals should otherwise impact this analysis is also meritless" because that application was improper. *Id.* (citing N.Y. C.P.L. § 460.20). Judge Lovric therefore concluded that Petitioner had until June 7, 2021, to timely file the instant action. *Id.* at 14.[9] However, the habeas corpus petition, which was filed on June 3, 2022, was almost a year too late. Consequently, Judge Lovric determined that "statutory tolling alone does not save petitioner's claims from being deemed untimely." *Id.* at 14-15.

### C. Judge Lovric's Equitable Tolling Assessment

Judge Lovric recognized that to warrant equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida,* 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008) (same).

---

[9] Judge Lovric noted that "[t]wo days were remaining in the statutory limitations period. Two days from June 4, 2021, was June 6, 2021; however, that was a Sunday. *See* Fed. R. Civ. P. 6(a)(1)(C)." Pet. at 14, n. 15.

Judge Lovric indicated that Petitioner primarily argued that he was entitled to equitable tolling because, despite his continued correspondence with the state courts, "he did not ever receive notice of the Third Department's amended June 4, 2021 judgment and was completely unaware that the Third Department denied his application for leave to appeal to the Court of Appeals."  R&R at 15 (citing Traverse at 9-10).  Petitioner argued that, had he known as much, he would have filed his § 440 motion earlier and been entitled to the benefit of further tolling. *Id.* (citing Traverse at 9-10). Judge Lovric noted that Respondent argued that Petitioner's actions were contrary to his claims that he needed to exhaust one state court challenge before commencing another, and that a miscalculation of the AEDPA deadline or alleged ignorance of the law were both insufficient to warrant equitable tolling. *Id.* at 15-16.

Judge Lovric accepted Petitioner's argument that the Appellate Division's subsequent correction and explication of its June Order, together with Petitioner's alleged confusion about the June Order's ambit, constituted an extraordinary circumstance that potentially warranted equitable tolling. R&R at 16-17.  Judge Lovric wrote:

> It is unclear when petitioner was notified that the Third Department's denial also encompassed his request for leave to appeal to the Court of Appeals. However, it could not have happened before the June Order was corrected in late July. Mention of the corrected order was not included in the correspondence authored by the Court of Appeals on July 28, 2021. Instead, it appears that petitioner may have first been notified about the application's denial on or about August 27, 2021, when he was sent a copy of the letter authored by NYPTI explaining that the June Order had been amended. Conversely, it seems that the latest petitioner knew about the denial was when he received the Court of Appeal's decision dismissing his subsequent appeal application on September 30, 2021. Therefore, somewhere between thirty-seven (37) and seventy-one (71) days beyond the date of the Third Department's corrected decision was when petitioner received the information that his application for leave to appeal was denied and his coram nobis action was concluded.

*Id.* at 16–17. Judge Lovric concluded that given this delay, and following the logic of *Yusuf v. Colvin*, No. 2:18-CV-3360, 2022 W L 4291784, at *7 (E.D.N.Y. Sept. 16, 2022) and the Second Circuit cases upon which it relies, the delay in receiving the corrected order constituted an extraordinary circumstance. R&R at 16-17.

Nevertheless, Judge Lovric opined that Petitioner was not entitled to equitable tolling because, despite the arguably extraordinary circumstance, Petitioner failed to demonstrate reasonable diligence in pursuing his remedies. R&R at 17-19. Judge Lovric noted that Petitioner had to show that he "consistently and diligently pursued his rights throughout the entire period he seeks to toll" because "show[ing] reasonable diligence for [only] a discrete period of time" is insufficient. *Id.* at 18. Judge Lovric further noted that "Petitioner waited almost an entire year before he began collaterally challenging his state court convictions after his conviction became final," and equitable tolling has been denied based on that time period alone. *Id.* at 18–19 (citing caselaw).

Judge Lovric rejected Petitioner's argument that he was not inactive for 364 days because he was spending the time preparing his extensive state court pro se motions, and that he waited to file his § 440 motion to avoid "parallel litigations in confliction [sic], producing a potential waste of judicial resources." *Id.* at 19 (citing Traverse at 10).

Judge Lovric deemed Petitioner's arguments unavailing, explaining:

First, petitioner's argument about fearing the consequence of parallel litigation in state court is not overly persuasive because his state court actions sought relief on different bases. Second, petitioner's inconsistent actions militate against his assertions that parallel litigation could not coexist because he filed his present habeas action while acknowledging that his coram nobis appeal and 440 motion were still pending in state court. Pet. at 6. Petitioner has provided no indication why he did not submit his federal habeas petition earlier, since he ultimately did so while he was still awaiting the outcome of his pending state court actions. Third, petitioner did immediately file his 440 motion upon receipt of the June

Order, supporting his assertion that his 440 motion was completed prior to June. Given that it does not appear that petitioner was truly confused about being able to file multiple actions at once, it is unclear to the Court why petitioner waited to file the 440 action. Therefore, petitioner's prolonged inaction for essentially the entire one-year limitations period, followed by a punctuated period of litigation two days prior to the expiration of the limitations period, represents a lack of persistent due diligence found insufficient to warrant equitable tolling.[10]

R&R at 19–20. In response to Petitioner's assertion that he wrote to "Federal Courts expressing his efforts at exhausting his State remedies in order to equitably toll the AEDPA clock, but those correspondence were returned due to no case yet open to attach them to," Judge Lovric noted that any such arguments should have been submitted in response to the limited answer, and none were provided. *Id.* at 20-21 (citing Traverse at 15). Finally, Judge Lovric found that "any arguments that petitioner was a layman and unskilled in the law" were "similarly insufficient to change the Court's analysis." *Id.* at 21.

Judge Lovric concluded that Petitioner "has failed to establish the diligent pursuit of his claims; therefore, equitable tolling will not save the untimely petition." *Id.* at 21.

### D. Petitioner's Objection to the Timeliness Calculation

Petitioner argues that the statutory tolling period extended until late July 2021, when the June 2021 Order was corrected, and that he submitted his § 440 motion on July 4, 2021, before the statutory tolling period expired. Dkt. No. 42, at 8–9.[11] Petitioner

---

[10] Judge Lovric noted in a footnote: "The undersigned wrestled with whether petitioner should benefit from the rare and extraordinary application of equitable tolling in this unique circumstance. However, the ultimate conclusion was that applying equitable tolling would not accomplish the policy behind its creation, namely "'avoid[ing] inequitable circumstances' in instances of unfairness where a litigant was 'prevented in some extraordinary way from exercising his rights.' *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (internal quotation marks and citations omitted)." R&R at 20.

[11] Petitioner argues that Magistrate Judge Lovric erred in concluding that Petitioner submitted his § 440 motion upon receiving the original June 4th Order. *Id.* at 9. The Court does not need to consider that argument because that fact is not relevant to the Court's analysis, as set forth below.

asserts that his coram nobis petition sought to generate a complete record and submitting a § 440 motion before "potentially being provided a complete record would have cost Petitioner the right to utilize the entire record in his submissions." *Id.* at 9. Petitioner argues that it was "improper" for the Court of Appeals to use a date of June 4, 2021 for its second corrected order.

Petitioner further contends that he "was incredibly diligent during the months following denial of his writ of certiorari," citing to evidence that he submitted "lengthy briefs" and motions to State courts, including his coram nobis petition, and that he submitted complaints about his state court proceeding to the Commission on Judicial Conduct, the Commissioner on Prosecutorial Conduct, Bar Associations, "numerous agencies and two different Governors." *Id.* at 10. Petitioner argues that he did this during the COVID-19 pandemic when the law library was closed to patrons; when the equipment in that law library–when opened–"was substandard and malfunctioning;" and when books were unavailable. *Id.*

## E.  Analysis

### 1.  Constitutionality of AEDPA's Statute of Limitations

As an initial matter, Petitioner's argument that the AEDPA's statute of limitations is "unconstitutional" is rejected as without merit. *See Best v. New York City Police Dep't Sex Offender Unit*, No. 20-CV-2382 (WFK)(LB), 2020 WL 2933441, at *3, n. 3 (E.D.N.Y. June 3, 2020) ("Because AEDPA's one-year statute of limitations leaves habeas petitioners with some reasonable opportunity to have their claims heard on the merits, the limitations period does not render the habeas remedy 'inadequate or ineffective to test the legality of detention,' and therefore does not *per se* constitute an

12

unconstitutional suspension of the writ of *habeas corpus.*") (quoting *Rodriguez v. Artuz,* 990 F. Supp. 275, 283 (S.D.N.Y. 1998) (Sotomayor, J.), *aff'd* 161 F.3d 763 (2d. Cir. 1998), in turn citing *Swain v. Pressley,* 430 U.S. 372 (1977)).

### 2. Statutory Tolling

Petitioner was entitled to statutory tolling during the period when his coram nobis petition was pending. 28 U.S.C. § 2244(d)(2); *Hizbullahankhamon v. Walker*, 255 F.3d 65, 69 (2d Cir. 2001). A coram nobis application is pending "from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999). It is well-settled that "'statutory tolling for the purposes of AEDPA ends with the 'filing' of the state court's final order,' not the date on which the petitioner 'received notice of the state court's order.'" *Williams v. McCarthy*, 708 F. Supp. 3d 309, 324 (W.D.N.Y. 2023) (quoting *Saunders*, 587 F.3d at 549). For reasons discussed below, the Court finds that the state court's final order on Petitioner's coram nobis application was on June 4, 2021. Thus, there is no merit to Petitioner's argument that the coram nobis petition was still pending until he learned of its final resolution.

Judge Lovric concluded that the Third Department's June 4, 2021 order denying Petitioner's application for reargument and leave to appeal meant that the application was no longer pending before any state court. *See* R&R at 12-13. The Court agrees. The fact that the June Order was later corrected does not change the results here. "All courts have the inherent power to enter orders nunc pro tunc to show that a thing was done at one time which ought to have been shown at that time. It is an entry now for something previously done so that the record may actually speak the truth." *Matthies v.*

*R. R. Ret. Bd.*, 341 F.2d 243, 248 (8th Cir. 1965) (citing 70 A.L.R.2d 1131 *et seq.*).  In

New York, *nunc pro tunc* orders are similarly intended to correct "[i]rregularit[ies] in

procedure[.]" *Merick v. Merick*, 266 N.Y. 120, 122 (N.Y. 1934).  Accordingly, "[w]hen a

ruling has in fact been made but is improperly evidenced by a defective mandate, or by

no mandate at all, an appropriate and suitable order or judgment which manifests the

existence of a determination may subsequently be granted to take effect as of the date

of such determination." *Id.*; s*ee also Fed. Trade Comm'n v. Minneapolis-Honeywell

Regul., Co.*, 344 U.S. 206, 211 (1952) (holding that "the mere fact that a judgment

previously entered has been reentered or revised in an immaterial way does not toll the

time within which review must be sought.").  On the other hand, "when the lower court

changes matters of substance, or resolves a genuine ambiguity, in a judgment

previously rendered . . . the period within which an appeal must be taken or a petition

for certiorari filed [should] begin to run anew." *Fed. Trade Comm'n*, 344 U.S. at 211-12.

This analysis has been applied so "that when the lower court changes matters of

substance, or resolves a genuine ambiguity in an otherwise appealable order, the period

within which an appeal must be taken . . . begin[s]s to run anew." *United States v.

Santiago-Colon*, 917 F.3d 43, 50 (1st Cir. 2019) (internal quotation marks omitted).

Here, the Corrected Order did not change a matter of substance or resolve a

genuine ambiguity in a judgment previously rendered.  Rather, it represented that a

ruling had already been made on Petitioner's request for permission to appeal to the

New York Court of Appeals but was improperly evidenced by the June Order.

Furthermore, the Corrected Order is not, itself, an appealable order. *See

Coleman v. Melecio*, No. 9:20-cv-0105, 2021 WL 638272 at *3 (N.D.N.Y. Feb. 18, 2021);

*Jones v. Superintendent of Wende Correctional Facility*, No. 16 Civ. 7109, 2020 WL 9048784, at *4 (S.D.N.Y. Oct. 6, 2020). Because New York law provides that an appeal to the New York Court of Appeals may not be taken where, as here, an application for the same relief has already made to a Justice of the Appellate Division, *see* SCR at 942 (citing New York CPL 460.20; *People v. McCarthy*, 250 N.Y. at 361), once the Third Department denied Petitioner leave to appeal the denial of his coram nobis petition he had reached the end of the road within the state system on that collateral attack. Further, Petitioner has provided no case support for extending the statute of limitations based upon the Corrected Order, and the Court has found none.

The Court agrees with Judge Lovric that Petitioner was entitled to statutory tolling for the entire period that his coram nobis petition was pending before the state courts, which period ended on June 4, 2021 when the Third Department denied leave to appeal. *See* R&R at 11-12. At that point, two days remained in the limitations period. *Id.* The limitations period began running again, and expired on Monday, June 7, 2021. *Id.* at 12-13 & 14 n.15. Moreover, because Petitioner's time for seeking habeas relief expired before he filed his § 440 motion – whether this was on June 9, 2021 or July 4, 2021, Petitioner was not entitled to statutory tolling for the period that the § 440 motion was pending as the limitation period's expiration date is not reset by an application for collateral relief filed after the expiration date. *Id.* at 13 (citing *Gillard*, 2017 WL 318848, at *3; *Roberts*, 2016 W L 2727112, at *2); *cf. Wilson v. United States*, 413 F.3d 685, 687 (7th Cir. 2005) (holding that "a federal district judge cannot extend the time to appeal by vacating and reentering a judgment," and "a state judge cannot extend the time to file a federal collateral attack by vacating and reentering a judgment.").

15

### 3. Equitable Tolling

The AEDPA's one-year statute of limitations period "is subject to equitable tolling in appropriate cases." *Holland*, 560 U.S. at 645. To warrant equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008).

> To show that extraordinary circumstances 'prevented' him from filing his petition on time, [P]etitioner must 'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [P]etitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.

*Hizbullahankhamon*, 255 F.3d at 75 (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

To establish reasonable diligence, a petitioner must show that he "consistently and diligently pursued his rights throughout the entire period he seeks to toll" because " "show[ing] reasonable diligence for [only] a discrete period of time," is insufficient. *Owens v. Keyser*, No. 1:18-CV-11638, 2020 WL 9596014, at *6–7 (S.D.N.Y. Sept. 25, 2020) (denying equitable tolling where petitioner failed to "proffer[] any facts to show that he exhibited any diligence [for the eighteen months' time from when] . . . he learned that his leave to appeal was denied until he filed his Petition, except for the brief time [for one month] when he enlisted the help of his housing officer [to acquire his legal file]."); *see also Taylor v. Brown*, No. 1:06-CV-7675, 2008 WL 4452360, at *4 (S.D.N.Y. Oct. 2, 2008) (opining that equitable tolling would not be available for a petitioner who

timely filed a habeas petition which then was stayed, but then failed to promptly request that the stay be lifted until 200 days after the limitations period had expired, and did not otherwise "proffer an explanation for the actions he took [during those 200 days]  to pursue either exhaustion of his state-court remedies or his federal habeas corpus petition."); *Gadson v. Greiner*, 1:00-CV-1179, 2000 WL 1692846, at *2 (E.D.N.Y. Sept. 27, 2000) (holding that a one-year period and seven and one-half month period constitute "prolonged periods of inactivity [that] cannot be viewed as anything other than a marked lack of diligence.").

        **a.**      **364 Day Delay During COVID**

Petitioner waited 364 days before he began collaterally challenging his state court sentence after his conviction became final.  Based on that circumstance alone, equitable tolling has been denied.  *See Barrett v. United States*, 961 F. Supp. 2d 403, 409 (D. Conn. 2013) (finding petitioner's "inordinate delay in filing his petition – nearly seven months after his attorney explicitly informed him of his right to do so – precludes any finding or reasonable diligence.") (citing *Belot v. Burge*, 490 F.3d 201, 207-08 (2d Cir. 2007) (affirming district court's decision that petitioner was not entitled to equitable tolling because "the petitioner ought reasonably to have begun his preparation earlier and filed an unpolished–but timely–petition rather than wait to file his more polished petition . . . the week that the deadline expired.") (internal quotation marks and alterations omitted).

If the Court were to excuse Petitioner's inaction for nearly a year, he argues that tolling should apply because the filing of his state court collateral challenges and habeas petition were simultaneously occurring with a global pandemic.  Dkt. No. 42 at

10.  Specifically, Petitioner's coram nobis petition was filed in November of 2020 and his § 440 motion was filed in July of 2021.  However, it is important to note that "the pandemic did not begin in earnest until March 2020," and Petitioner's conviction became final on November 4, 2019, thus "Petitioner had let [almost] four months elapse without taking any action[.]"  *Moorer v. Uhler*, No. 6:23-CV-6656, 2025 WL 1530404, at *5 (W.D.N.Y. May 29, 2025) (intimating that a petitioner using COVID as a basis for his equitable tolling, who also let over four months of the limitations period expire before the pandemic commenced, proffered a doubtful reason for tolling).

If the Court is also to fully credit Petitioner's COVID arguments, despite the passage of almost a third of the limitations period without any attempt to file any collateral actions, Petitioner reports that during the pandemic "the law library was closed to patrons . . . [and] – when open – [the equipment] was sub-standard and malfunctioning [and] . . . books were unavailable."  Dkt. No. 42 at 10.  "While the pandemic undoubtedly created lamentable challenges for habeas petitioners, courts in this Circuit have held that its mere existence is not alone sufficient to warrant equitable tolling."  *Cohen v. Superintendent of Sing Sing Corr. Facility*, No. 1:22-CV-2553, 2022 WL 2704509, at *3 (E.D.N.Y. July 8, 2022) (citing cases).  Further, other than the aforementioned conclusory statements, "petitioner does not articulate the nature of any law library restrictions, when they began, how long they lasted or the efforts he undertook to file the petition in a timely manner."  *May v. Corey*, No. 9:22-CV-0731 (DNH/ML), 2023 WL 5611638, at *4 (N.D.N.Y. Aug. 14, 2023) (internal quotation marks, alterations and citations omitted).  In sum, "petitioner has not suggested that he was

entirely without library access throughout the period he seeks to toll . . . [which] is fatal to his pursuit of equitable tolling." *Id.* (citations omitted).

Moreover, Petitioner's own representations belie his claims that he was precluded from pursuing his rights. Specifically, Petitioner indicated that he was "submitt[ing] complaints to the Commission on Judicial Conduct, the Commission on Prosecutorial Conduct, Bar Associations, numerous agencies and two different Governors," as well as "scores of attorneys seeking assistance[.]" Dkt. No. 42 at 10. Accordingly, Petitioner was actively pursuing his rights, just not those involved with collaterally attacking his conviction or receiving federal habeas relief. Unfortunately, "focus[ing] on [a petitioner's] unsuccessful attempts to retain an attorney during the pandemic . . . does not explain what measures [a petitioner] took to file his petition without counsel." *Morales v. People*, No. 1:21-CV-2783, 2021 WL 6125598, at *2 (E.D.N.Y. Dec. 28, 2021). The same logic holds true for Petitioner's other complaints. Equitable tolling focuses on Petitioner's inability to file his habeas petition, and petitioner has failed to establish a causal connection between the global pandemic and his inability to file his pleading with this Court.

### b. Failure to Explain Why Petitioner Did Not File His Section 440 Motion Until July 4, 2021 (Despite it Being Signed on June 9, 2021)

Alternatively, assuming the Third Department's 47-day delay in issuing Petitioner's order denying his leave to appeal provides a basis for equitable tolling, Petitioner still fails to establish reasonable diligence. Petitioner asserts that he did not want duplicative litigation proceeding in the courts simultaneously and that he needed the coram nobis motion resolved before he filed his § 440 motion; however, those arguments are unpersuasive.

19

First, Petitioner's assertion about fearing the consequence of parallel litigation in state court is unconvincing.  Parallel litigation "involve[es] the same parties and the same issues brought in another forum . . . [and] the focus of the inquiry should be whether there is a danger of inconsistent results and a duplication of judicial proceedings." *Terra Int'l., Inc. v. Mississippi Chem. Corp.*, 896 F. Supp. 1468, 1476 (N.D. Iowa 1995).  Here, both the error coram nobis and 440 motions included overlapping claims of ineffective assistance of counsel; however, the 440 motion also argued a much broader spectrum of alleged violations for which Petitioner contended he was entitled to relief including, but not limited to, his plea being involuntary because it was procured under duress, the trial court erring in several of its rulings, material evidence being produced at trial in violation of his rights, and improper and prejudicial conduct during trial which also infringed upon Petitioner's rights.  Compare SCR at 636-37 (arguments advanced in writ of error coram nobis) with SCR at 1154-58 (arguments advanced in § 440 motion).  Accordingly, the two collateral challenges overwhelmingly sought different relief based on different claims and did not represent parallel litigation.

Second, Petitioner's inconsistent actions militate against his assertions that parallel litigation between any state court collateral challenges and his federal habeas petition could not coexist because he filed his present habeas action while acknowledging that his coram nobis appeal and § 440 motion were still pending in state court.  Pet. at 6.  Engaging in these actions is consistent with the Supreme Court's suggestion that

> [a] prisoner seeking state postconviction relief might avoid th[e] predicament [ – of trying to exhaust state remedies for years only to discover a filing defect in one of those cases renders his habeas petition time barred –] . . . by filing a protective

> petition in federal court and asking the federal court to stay and abey the federal
> habeas proceedings until state remedies are exhausted.

*Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (citing *Rhines v. Webber*, 544 U.S. 269, 278 (2005)).  In fact, that is precisely what happened in this case.  Dkt. No. 8, Decision and Order ("July Order") (staying habeas action to allow petitioner to exhaust his state court remedies).  "In order to equitably toll the one-year period of limitations, [petitioner] must show that extraordinary circumstances prevented him from filing his petition on time."  *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).  Petitioner has provided no indication why he did not submit his federal habeas petition earlier, since he ultimately did so, as a protective filing, while he was still awaiting the outcome of his pending state court actions.

Third, Petitioner does not explain why he did not immediately file his § 440 motion in June, when it was signed and ready to go, and instead waited until almost a month later, on July 4, 2021.  Given that it does not appear that petitioner was truly confused about being able to file multiple actions at once, it is unclear to the Court why petitioner waited to file the § 440 action and, ultimately, his federal habeas petition. Despite having several opportunities to address this issue, petitioner has failed to further clarify his reasoning.  Consequently, it is reasonable to conclude that this is another example of petitioner's lack of reasonable diligence through this time-period. Because Petitioner ultimately filed his § 440 motion prior to receiving the order denying his motion for leave to appeal, and Petitioner has provided no explanation to conclude otherwise, there was similarly no reason for petitioner to believe that he could not or should not also file his federal habeas petition.

### F.    Certificate of Appealability

In his last objection, Petitioner argues that Judge Lovric erred in recommending that he not be granted a certificate of appealability because, Petitioner contends, his constitutional rights were violated. *See* Dkt. No. 42 at 12-25. His argument addresses the substantive merits of his underlying claims. *See id.* However, "[w]here, as here, the denial of the habeas petition is based upon procedural grounds, the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation." *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (citing *Slack v. McDaniel,* 529 U.S. 473, 478 (2000)); *see Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009)("'When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim,' ... a certificate of appealability should issue only when the prisoner shows" that (1) "'jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* [(2)]* jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'") (quoting *Slack*, 529 U.S. at 484). Petitioner's Objection 5 fails on the procedural ruling element.

Jurists of reason would not find it debatable that the Petition was untimely filed. Thus, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Slack*, 529 U.S. at 484.

## IV.    CONCLUSION

After carefully reviewing Petitioner's objections de novo, the Court agrees with Magistrate Judge Lovric's recommendation that the petition be dismissed as untimely.

The Court has reviewed the remainder of the Report and Recommendation, to which Petitioner did not object, for clear error and found none. Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Lovric's Report and Recommendation (Dkt. No. 40) is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the petition for writ of habeas corpus (Dkt. No. 1) is **DENIED** and **DISMISSED**; and the Court further

**ORDERS** that no certificate of appealability shall be issued with respect to any of Petitioner's claims; and the Court further

**ORDERS** that any further request for a certificate of appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and the Court further

**ORDERS** that Petitioner's motion for an expedited decision (Dkt. No. 46) is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated:  September 9, 2025

Brenda K. Sannes
Chief U.S. District Judge